UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JAMES J. MALOT et al**                                       **CIVIL NO. 03-1185 (DRD)**
Plaintiffs,

v.

**DORADO BEACH COTTAGES et. al.,**
    Defendants.

## DISMISSAL OF PLAINTIFFS' COMPLAINT

The above mentioned case is a civil case requesting specific compliance with a contract between the parties, or in the alternative, award of damages for breach of contract. The matter pending before the Court is a Motion to Dismiss presented by the Defendants (Docket No. 68) pursuant to Fed. R. Civ P. 37 (b) (2) (c).

Sometime in the early 1990's, Defendants approached Plaintiffs with a proposal to build several, separate, condovilla housing units. The proposed plan envisioned Plaintiffs to buy one of the units; he was to advance to Defendants a $100,000.00 deposit and a promissory note for $600,000.00 enabling Defendants to proceed to finance and build the project. Once the project was concluded Defendants would turn over to Plaintiffs the housing unit in exchange for the $600,000.00, as agreed by the Promissory Note, and an additional $100,000.00, thus, paying a total price of $800,000.00 for the condovilla.

On September 24, 1994, Plaintiffs signed a Reservation Agreement and delivered Defendants a check for $100,000.00. Two days later, on September 26, 1994, Plaintiffs subscribed a Promissory Note for $600,000.00. The construction took place between 1994 and 1998. During this period,

1

some disagreements between the parties ensued. Sometime during the construction period, Plaintiffs moved to California.

On July 9, 1998, Defendants sent a letter to Plaintiffs requesting their consent to proceed with the signing of the Deed of Admission to the Limited Partnership Association.[1] Said letter informed Plaintiffs that the consent was required immediately or Defendants would return the money and rescind the contracts between the parties. On September 11, 1998, Plaintiffs replied to the July 9th letter. Through said letter, Plaintiffs requested a copy of the document in question to consent by signing. On November 19, 1998, Defendants sent a written communication to Plaintiffs returning the $100,000.00 and the Promissory Note, and informing Plaintiffs they were rescinding the contract between the parties. Defendants, Dorado Beach Cottages, had thus unilaterally terminated the agreement as was stated under the contract. (See Note 1, *infra*). Plaintiffs then proceeded to file the instant case requesting Defendants' compliance with the contract, or, in the alternative, an award of damages for breach of contract (Docket No. 75).

Pending before the Court is Defendants Motion to Dismiss (Docket No. 87) based on Plaintiffs' repeated violations of Court orders as to compliance with discovery orders and management orders as well as lack of prosecution. Plaintiff's replied on March 31, 2005 (Docket No. 93) after requesting yet another extension of time.

The procedural background showing Plaintiffs' utter disregard for the Court's orders and lack of prosecution is briefly explained. On January 27, 2004, <u>more than a year ago</u>, the Court held

---

[1] The Reservation Agreement entered into by the parties stated that the Dorado Beach Cottages Associates was under no obligation to develop, construct, or deliver a Housing Unit to any Interested Partner - i.e. the Plaintiffs herein - until the Interested Partner has been admitted into the special partnership. Admission into the special partnership was contingent on both the Interested Partner and Dorado Beach Cottages Associates signing the Deed of Admission.

an Initial Scheduling Conference in which a cut-off date for discovery proceedings was set by the Court for November 1st, 2004, both, Plaintiffs and Defendants, agreed to this dated and no objection was lodged by any party. (Docket No. 33). Subsequently, on March 12, 2004, Plaintiffs requested an extension of time until April 4, 2004 to answer interrogatories (Docket No. 37). The Court granted the request. (Docket No. 40). Notwithstanding, Plaintiffs failed to comply with their own self-imposed deadline. Plaintiffs filed the answer to interrogatories on May 24, 2004 (Docket No. 38), untimely by almost two months, failing, thus, to comply with Court related deadlines for the first time and, of course, causing delay to the scheduling.

On June 3, 2004, the Court held a Status Conference and continued the cut-off date for discovery for December 15, 2004. (Docket No. 42). Parties would, thus, had a month and a half more than originally scheduled to conduct and conclude their discovery. Moreover, because the parties expressed to the Court that their efforts to settle had been fruitless, during a Settlement Conference held on July 12, 2004 the Court, once again extended the discovery cut-off date until January 14, 2005 – granting a year more than originally contemplated. (Docket No. 43).

After several failed attempts to depose Plaintiffs, Defendants requested from the Court an order to compel both plaintiffs to appear for depositions due to them having failed to appear. (Docket No. 50). Taking into consideration Plaintiffs' suggestions of October 20th and 21st, the Court set the dates for both of Plaintiffs' depositions for October 20th, 21st and 22nd of 2004 (Docket No. 55). The Court was extremely accommodating to Plaintiffs. Depositions were scheduled for a weekend enabling Plaintiffs to fly to Puerto Rico, manage their professional commitments, minimizing potential conflicts and remain in Puerto Rico only for a short time during non-working days. This accommodation was granted notwithstanding Plaintiffs prior noncompliance to travel

to their depositions notwithstanding that the claim was field on this district.  However, Plaintiffs were forewarned at Docket No. 55 of sanctions for noncompliance with this Courts orders.

Notwithstanding this Court's clear and unambiguous Order, only two weeks prior to the taking of said deposition, Dr. Caroline Chantry, M.D. informed Defendants she had to leave early on the 20th to catch a plane.  Dr. Chantry could only be deposed for about two hours before she left. Plaintiffs later agreed that Dr. Chantry would return to Puerto Rico for the taking of her deposition on November 23, 2004.  Once again they failed to do so.

Two days before the third cut-off date to conduct discovery was to expire, again on the eve of a deadline's expiration date, Plaintiffs petitioned the Court to change the date for discovery proceedings for February 11, 2005.  (Docket No. 66).  The Court, during a Status Conference held on January 12, 2005, gratuitously and extraordinarily granted the request and extended the cut-off date until February 14, 2005.  The Court, at that moment, warned the parties that no more extensions would be granted on this matter and advised Plaintiffs' lawyer that Dr. Chantry had to travel to Puerto Rico to finish her deposition before said date. (Docket No. 76).  Notwithstanding the Courts warning that this was the last extension to be granted, Plaintiffs, once again and only two days before the discovery period was to expire, requested the Court to extend, **FOR A FIFTH TIME**, the cut-off date for discovery until March 15, 2005.  (Docket No. 80).  They averred that taking Dr. Chantry's deposition had been impossible.  This request was denied. (Docket No. 83).  Even after the parties were warned no more extensions of time would be granted, Dr. Chantry failed to appear in Puerto Rico to finish her deposition.

On March 1, 2005 Defendants filed a motion to dismiss pursuant to Fed. R. Civ. Proc. 37 (b)(2) (Docket No. 87) for which an opposition/response was due on March 14, 2005.  On March 4,

4

2005 Plaintiffs filed **yet another** motion for extension of time until April 4, 2005 to answer the motion to dismiss (Docket No. 88). The motion was reluctantly granted (Docket No. 98) and Plaintiffs filed the answer on March 31, 2005 (Docket No. 93).

Defendants' request for dismissal alleges that Plaintiffs' clear disregard for this Court's discovery and management orders and their failure to prosecute should be grounds for dismissing Plaintiffs' suit. Defendants call to the Court's attention Plaintiffs' numerous last minute requests for extensions and their continued failures to comply with Court orders as related herein. In their opposition, Plaintiffs allege that Defendants have appeared before the Court with unclean hands. Plaintiffs claim Defendants have failed to produce various documents requested during discovery. In addition, Plaintiffs allege their violations were not perpetrated in bad faith and that they had valid reasons, i.e. Dr. Chantry's professional responsibilities.

The Court strongly disagrees. Fed. Rule Civ. Proc. 37 (b) (2) states:

"If a party... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

Moreover, "[i]n an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation." O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152 (1st Cir. 2004). It is Rule 16 which provides the Court with devices, like a scheduling order, necessary to manege its docket. See Fed.R.Civ.P. 16. Moreover, in order for Rule 16(b) to be effective, the Courts cannot allow litigants to treat scheduling orders "as a

5

frivolous piece of paper idly entered, which can be cavalierly disregarded without peril" as has been abused in the instant case. *See* O'Connell, 357 F.3d at 155. However, under Rule 16(b), a court may extend a deadline on a certified showing of good cause as to why the deadline cannot reasonably be met despite de diligence of the party seeking the extension.

Plaintiffs have been aware of discovery and dispositive motions deadlines since the Initial Scheduling Conference held almost a year and a half ago. Moreover, on five different occasions, the Court has acceded to Plaintiffs' multiple requests to extend already set cut-off dates for discovery and/or dispositive motions. Furthermore, Plaintiffs have consistently waited until almost the last day of the period this Court has granted to file their requests for an extension of time. Still, Plaintiffs have not heeded the warnings of this Court, as expressed in O'Connell, Id, and have failed to comply with the Courts orders on innumerable occasions particularly timely producing Plaintiffs for deposition.

Plaintiffs in this case were provided clear unambiguous orders which they have continuously failed to follow and were expressly warned as to potential sanctions. (Docket No. 55). "[T]he effective administration of justice requires that trial courts possess the capability to manage their own affairs". Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), *quoting* Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002). Furthermore, counsel do not run the Court. Thus, parties have an "**unflagging duty to comply with clearly communicated case-management orders**". Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir.1998) (*emphasis added*). It is self-evident that "courts cannot function if litigants may, with impunity, disobey lawful orders." Chamorro v. Puerto Rican Cars, Inc., 304 F.3d at 5, HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 916 (1st Cir. 1988). "[D]ismissal either for failure to comply with

discovery orders or lack of prosecution is a matter within the discretion of the district court and the claim of abuse of discretion [the court emphasizes] has not received a sympathetic ear from [the First Circuit]." Damiani v. Rhode Island Hosp., 704 F.2d 12, 17 (1st Cir. 1983).

Plaintiffs' claims should be dismissed also for obvious lack of prosecution. Rule 41(b) of the FED.R.CIV.P. provides *inter alia* that Defendants may move for dismissal of an action for "failure of the Plaintiffs to prosecute or to comply with these rules or any order of court." Furthermore, "[i]t has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." Chambers v. NASCO, Inc., 501 U.S. at 43, 111 S.Ct. at 2132 (citations omitted). Those inherent powers to sanction parties for litigation abuses include the power to "**act sua sponte** to dismiss a suit for failure to prosecute." Id., at 44 (*emphasis ours*). Thus, the Court holds that Plaintiffs' clearly evidenced lack of prosecution and failure to follow our orders warrants dismissal.

The Court advises the Plaintiffs that a party simply "cannot expect a trial court to do [their] homework for [them]." Mackoy v. Massachusetts Institute of Tech., 950 F.2d 13, 22 (1st Cir. 1991) Moreover, it explained that a moving party is responsible for putting its best foot forward in an effort to present a legal theory that will support its claim. Id. at 23 (citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 52 (1st Cir. 1990)). The Court finds they have failed to be **reasonably** diligent.

The Court is well aware that "[d]ismissal with prejudice is a harsh sanction, ... which should be employed only when a Plaintiffs' misconduct has been extreme, . . . and only after the district court has determined that none of the lesser sanctions available to it would truly be appropriate." Estate of Solis-Rivera v. United States, 993 F.2d 1, 2 (1st Cir.1993). However, **the Court explicitly**

**makes such a finding herein**.  Plaintiffs have failed to prosecute their case and have **persistently failed to heed to Court's orders even after receiving a forewarning as to sanctions**.  The Court does not have the "obligation to play nursemaid to indifferent parties." Pinto v. Universidad de Puerto Rico, 895 F.2d 18, 19 (1st Cir. 1990).  Therefore, dismissal is firmly founded in this case in view of Plaintiffs' repeated disregard of the Court's orders. The Court stresses, however, that the instant case will remain open regarding the counter-claim brought forth by Defendants against Plaintiffs.

Plaintiffs' claim is hereby **DISMISSED** with prejudice.[2]

**IT IS SO ORDERED.**

Date: July 28, 2005

S/ Daniel R. Dominguez
**DANIEL R. DOMINGUEZ**
**U.S. District Judge**

---

[2]The Court will refrain from issuing a partial judgment at this time.  The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. See Nichols v. Cadle Co., 101 F.3d 1448, 1449 (1st Cir. 1996) ("piecemeal appellate review invites mischief.  Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); Zayas-Green v. Casaine, 906 F.2d 18, 21 (1st Cir. 1990) ("This final judgment rule . . . furthers 'the strong congressional policy against piecemeal review.'" Id. (quoting In re Continental Investment Corp., 637 F.2d 1, 3 (1st Cir. 1980)); Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority, 888 F.2d 180, 183 (1st Cir. 1989); Consolidated Rail Corp v. Fore River Ry. Co., 861 F.2d 322, 325 (1st Cir. 1988); Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 43 (1st Cir. 1988); Santa Maria v. Owens-Ill., Inc., 808 F.2d 848, 854 (1st Cir. 1986)); see also United States v. Nixon, 418 U.S. 683, 690 (1974).